1   The Law Offices of Geri Lynn Green, LC
    Geri Lynn Green, State Bar No. 127709
2   700 Montgomery Street
    San Francisco, CA  94111
3   Telephone:  (415) 982-2600
    Facsimile:  (415) 648-7648
4   Email:  gerigreen@earthlink.com

5   Attorneys for Plaintiff
    **MARILEE ANN HEWITT**

6

7

8               **IN THE UNITED STATES DISTRICT COURT**

                **EASTERN DISTRICT OF CALIFORNIA**
9
                **SACRAMENTO DIVISION**
10

11  **MARILEE ANN HEWITT, on behalf of herself and**   ) Case No.
    **on behalf of her deceased son, WILLIAM FRANCIS**  )
12  **SAMS, as his successor in interest,  and as**      ) **COMPLAINT FOR DAMAGES**
    **Administratrix of the ESTATE OF WILLIAM**          ) **UNDER THE CIVIL RIGHTS**
13  **FRANCIS SAMS,**                                    ) **ACT, 42 U.S.C. §1983;**
                                                         ) **WRONGFUL DEATH,  CAL.**
14      **Plaintiffs,**                                  ) **CODE CIV. PROC. SECTION**
                                                         ) **377.60; MEDICAL**
15                                                       ) **MALPRACTICE AND THE**
            **v.**                                       ) **COMMON LAW.**
16                                                       )
                                                         )
17                                                       ) **DEMAND FOR JURY TRIAL**
    **COUNTY OF SACRAMENTO, CALIFORNIA,**                )
18  **SACRAMENTO COUNTY SHERIFF'S**                      )
    **DEPARTMENT, SACRAMENTO COUNTY JAIL**               )
19  **CORRECTIONAL HEALTH SERVICES,**                    )
    **SHERIFF JOHN MCGINNESS, in his official**          )
20  **capacity as Sacramento County Sheriff and**        )
    **individually, SANDRA HAND, M.D., in her**          )
21  **official capacity as Medical Director of Sacramento** )
    **County Jail Correctional Health Services and**     )
22  **individually, JOHN O' SHAUGHNESSY, in his**        )
    **official capacity as Chief of Sacramento County Jail** )
23  **Correctional Health Services and individually**    )
    **capacity, TAMARA ROBINSON, M.D. and**              )
24  **DOES I-XXV.**                                       )
            **Defendants.**                              )
25                                                       )
                                                         )
26  _____ )

CIVIL RIGHTS COMPLAINT

## INTRODUCTION

Plaintiff MARILEE ANN HEWITT, on behalf of herself and on behalf of her deceased son, WILLIAM FRANCIS SAMS as his successor in interest, and as administrator of his estate bring this civil rights action against defendants, pursuant to 42 U.S.C. §1983, for the violations of his Fifth and Fourteenth Amendment rights to adequate health care and protection, of Ms. Hewitt's First and Fourteenth Amendment rights to familial association and companionship, medical malpractice, intentional infliction of emotional distress and California's wrongful death statute, Cal. Civ. Proc. Code § 377.60.

This is an action for damages arising out of Defendants' violations of Mr. Sams's civil rights, as well as Defendants' negligence, medical malpractice, and unlawful withholding of medical care from Mr. Sams while he was in custody in the Sacramento County Main Jail. Defendants' unlawful actions caused Mr. Sams's death.  Defendant County of Sacramento, California (the "County") operates the Sacramento County Main Jail (the "Main Jail"). Defendants Sacramento County Sheriff's Department and Sacramento County Jail Correctional Health Services manage the provision of health care at the Main Jail.  Such health care is managed and provided by Defendants Sheriff John McGinness, Sandra Hand, M.D., and John O'Shaughnessy.  Upon information and belief, Defendants Tamara Robinson, M.D. ("Dr. Robinson") and Does I-XV were partly or wholly responsible for Mr. Sams's care and/or medical treatment while he was incarcerated in the Main Jail.

## JURISDICTION AND VENUE

1.      Plaintiff's claims under 42 U.S.C. § 1983 and the U.S. Constitution give rise to "federal question" subject matter jurisdiction in this Court pursuant to 28 U.S.C. § 1331. In addition, this Court has subject matter jurisdiction over the § 1983 claims pursuant to 28

U.S.C. § 1343 ("Civil rights and elective franchise" jurisdiction).   Pursuant to 28 U.S.C. § 1367, this Court has supplemental and/or pendant subject matter jurisdiction over the remaining claims.

2.     The Court's personal jurisdiction over Defendants County of Sacramento, Sacramento County Sheriff's Department and Sacramento County Jail Correctional Health Services is manifest.  The Court has personal jurisdiction over Defendants Sheriff John McGinness, Sandra Hand, M.D., John O'Shaughnessy, Dr. Robinson, and Does I-XX insofar as they reside and/or are employed by and/or within the State of California, and committed the tortious actions and omissions at issue within the State of California.

3.     Venue in this action properly lies in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391, insofar as (a) the County of Sacramento, California is a Defendant in this litigation; (b) the events giving rise to this action took place exclusively in Sacramento, California; and (c) Sacramento, California is located in this federal judicial district.

4.     The County was properly given notice of this claim pursuant to Cal. Gov't Code §§ 900, *et seq*., 910, *et seq*., and related provisions, insofar as Plaintiff served a notice on the Clerk of the County Board of Supervisors, and/or its designees, on or about November 28, 2006.

## **INTRADISTRICT ASSIGNMENT**

5.     Pursuant to Civ. L.R. 3-5, assignment to this division is proper because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the counties served by this division.

## THE PARTIES

6.   Plaintiff Marilee Ann Hewitt is an adult resident of the State of California, residing at 73 Dean Road, Apartment 7, in Sacramento, California 95815.

7.   Ms. Hewitt is the mother of Mr. Sams.  Ms. Hewitt is Mr. Sams's successor in interest and would be entitled to the property of Mr. Sams by intestate succession.

8.   Ms. Hewitt is the mother of Mr. Sams.  She is seeking special letters of administration and as such has standing to sue on behalf of the Estate of William Sams.

9.   Mr. Sams has no issue.

10.   Ms. Hewitt is bringing survival causes of action in this matter on behalf of Mr. Sams pursuant to California Code of Civil Procedure §§ 377.10 *et seq.*, and is suing individually for the wrongful death of her son.

11.   Defendant County of Sacramento, California is a municipality and was, at all relevant times and upon information and belief, the employer of the Sheriff McGinness, Dr. Hand, Mr. O'Shaughnessy, Dr. Robinson, and Does I-XX.  Under the doctrine of *respondeat superior* and/or the governmental actors doctrines, the County is legally responsible, *inter alia,* for the misconduct of Sheriff McGinness, Dr. Hand, Mr. O'Shaughnessy, Dr. Robinson, and Does I-XX's acts and omissions committed within the scope of their employment and/or agency with the County.  Upon information and belief, the County was, at all relevant times, responsible for the policies, customs, and procedures used at the Main Jail.

12.   Defendant Sacramento County Sheriff's Department (the "Department") is a Department of the County, and operates and manages the Main Jail.  At all relevant times, the Department was responsible for the acts and omissions of its employees, upon

information and belief, Sheriff McGinness, Dr. Hand, Mr. O'Shaughnessy, Dr. Robinson, and Does I-XX.  Upon information and belief, the Department was, at all relevant times, responsible for the policies, customs, and procedures used at the Main Jail.  The Department was also, at all relevant times, responsible for providing health care to detainees at the Main Jail.

13.    Defendant Sacramento County Jail Correctional Health Services ("Correctional Health Services") is a County and/or Department entity  responsible for providing health care services to detainees at the Main Jail.  At all relevant times, Correctional Health Services was responsible for the acts and omissions of its employees, Dr. Hand, Mr. O'Shaughnessy, Dr. Robinson, and Does I-XX.  Upon information and belief, Correctional Health Services was, at all relevant times, responsible for all health care services, as well as all health care policies, customs, procedures, and staffing decisions at the Main Jail.

14.    The County, the Department, and Correctional Health Services are collectively referenced herein as the "Public Entity Defendants."

15.    Sheriff John McGinness ("Sheriff McGinness"), was, at all times relevant hereto, employed by the Public Entity Defendants as Sacramento County Sheriff.  Sheriff McGinness is sued in his official and individual capacity, and was at all relevant times acting within the scope of his employment and/or agency with the Public Entity Defendants.

16.    Sandra Hand, M.D. ("Dr. Hand"), was, at all times relevant hereto, employed by the Public Entity Defendants as Medical Director of Sacramento County Jail Correctional Health Services.  Dr. Hand is sued in her official and individual capacity, and was at all relevant times acting within the scope of her employment and/or agency with the Public Entity Defendants.

17.   John O'Shaughnessy ("Mr. O'Shaughnessy"), was, at all times relevant hereto, employed by the Public Entity Defendants as Chief of Sacramento County Jail Correctional Health Services.  Mr. O'Shaughnessy is sued in his official and individual capacity, and was at all relevant times acting within the scope of his employment and/or agency with the Public Entity Defendants.

18.   Defendant Tamara Robinson, M.D. was, at all times relevant hereto, employed by the Public Entity Defendants.  Dr. Robinson is sued in her individual capacity, and was at all relevant times acting within the scope of her employment and/or agency with the Public Entity Defendants.

19.   The true names and identities of Defendants Does I-XX are presently unknown to Plaintiff.  Upon information and belief, at all relevant times herein Defendants Does I-XX were employees and/or agents of the Public Entity Defendants, acting at all relevant times within the scope of their employment and/or agency with the Public Entity Defendants.  Upon information and belief, such employees include, *inter alia*, guards, officers, supervisors, managers, jail commanders, doctors, nurses, and other health care professionals.  To the extent that Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy were not, respectively, the Sacramento County Sheriff, the Medical Director of Sacramento County Jail Correctional Health Services, and the Chief of Sacramento County Jail Correctional Health Services at the times of the events giving rise to this Complaint, Defendants Does I-XX include the persons who were the Sacramento County Sheriff, the Medical Director of Sacramento County Jail Correctional Health Services, and the Chief of Sacramento County Jail Correctional Health Services at such times.  Upon information and belief, Defendants Does I-XX acted with deliberate indifference, as well as reckless

disregard, to Mr. Sams's medical needs and safety, failed and/or delayed providing medical care to Mr. Sams, violated Mr. Sams's civil rights, wrongfully caused Mr. Sams's death, and/or encouraged, directed, enabled, and/or ordered other defendants to engage in such conduct.  Defendants Does I-XX are being sued in their respective individual and official capacities.  Plaintiff will seek to amend this Complaint after the true names and identities of Defendants Does I-XX are ascertained.  Defendants Does I-XX are collectively referenced as the "Doe Defendants" herein.

20.    Defendants Sheriff McGinness, Dr. Hand, Mr. O'Shaughnessy, Dr. Robinson, and Does I-XX are collectively referenced as the "Individual Defendants" herein.

**FACTUAL BACKGROUND**

**Mr. Sams Is Arrested and Incarcerated**

21.    On June 7, 2006, Mr. Sams was arrested by officers J. Brown (Badge #679) and M. McCurry (Badge #288) of the Sacramento Police Department.  His arrest arose out of his alleged possession of cocaine.

22.    Mr. Sams was booked at the Sacramento County Main Jail, located at 651 I Street in Sacramento, California, at approximately 7:26 p.m. on June 7, 2006.

23.    Upon information and belief, the Main Jail is operated, controlled, and overseen by the Department.

24.    Upon information and belief, the Department is a department of the County.

25.    At the time Mr. Sams was booked, Officer McCurry noted that Mr. Sams appeared to be under the influence of drugs, and, upon information and belief, provided such information to the staff at the Main Jail.

26.     After Mr. Sams was booked at the Main Jail, he was screened by a Department employee.  Mr. Sams's "Sacramento Sheriff's Department Receiving Screening" notes that he was under the influence of "cocaine/meth," and that he had a history of using such drugs. A Department employee further noted that, immediately prior to his arrest, Mr. Sams had "passed out" and was "difficult to arouse."

27.     Upon information and belief, the Public Entity Defendants knew that, immediately prior to his incarceration, Mr. Sams was transported to the University of California at Davis Medical Center ("UCDMC") via ambulance for medical treatment.

28.     Upon information and belief, the Public Entity Defendants knew that Mr. Sams did not receive treatment at UCDMC prior to his incarceration.

29.     Mr. Sams remained incarcerated in the Public Entity Defendants' custody from June 7, 2006 through the date of his death, June 15, 2006.

30.     Mr. Sams appeared at least twice in the Superior Court of California for the City of Sacramento – first on June 9, 2006, and again on June 13, 2006.  Despite Mr. Sams's plea of "No Contest" on June 13, 2006, he remained incarcerated at the Main Jail through the date of his death.

**The Public Entity Defendants Prevent Mr. Sams From Seeing His Mother, Ms. Hewitt**

31.     Between June 10, 2006 and June 15, 2006, Ms. Hewitt repeatedly attempted to visit Mr. Sams, and made inquiries to the Department regarding his condition.

32.     Despite her compliance with all applicable policies and procedures, the Department denied Ms. Hewitt the opportunity to visit her son during this period, and refused to provide her information regarding his condition.

## The Public Entity Defendants Fail to Treat Mr. Sams's Medical Condition

33.   Upon information and belief, Mr. Sams repeatedly and consistently complained of abdominal pain and other symptoms throughout his incarceration.

34.   Upon information and belief, Mr. Sams made these complaints to numerous employees and/or agents of the Public Entity Defendants, including but not limited to: doctors; nurses; other health care providers; and guards.

35.   The employees and/or agents of the Public Entity Defendants to whom Mr. Sams complained, and the Public Entity Defendants' employees and/or agents who were responsible for Mr. Sams's incarceration, custody, and care, are amongst the defendants referenced herein as Does I-XX.

36.   Despite his complaints, upon information and belief, Sheriff McGinness, Dr. Hand, Mr. O'Shaughnessy, Dr. Robinson, and Does I-XX denied medical treatment to Mr. Sams until June 13, 2006.

37.   On June 13, 2006, Mr. Sams was treated by Defendant Correctional Health Services, a County and/or Department entity which provides health care services for detainees at the Main Jail.

38.   He complained of "constipation" and a "stomach problem," as well as "burning coming up [in his] throat."  Mr. Sams stated that he had experienced his symptoms for a "couple of days."

39.   At approximately 3:45 p.m. the next day, Mr. Sams returned to Correctional Health Services complaining of "gastric distress" and "abdominal pain."

40.   Dr. Robinson, upon information and belief an employee of the Public Entity Defendants, further noted that Mr. Sams was "unable to get comfortable" due to "epigastric

1   burning," and "vomiting."

2       41.   While incarcerated at the Main Jail, Mr. Sams was obviously in terrible pain.

3       42.   Dr. Robinson noted that, on June 14, 2006, Mr. Sams could not remain still

4   without prompting, and that he cried, groaned, moved his legs, and lifted his torso off his

5   bed due to his severe abdominal pain.

6       43.   Mr. Sams consumed Maalox and a "GI cocktail."  Neither substance alleviated

7

8   Mr. Sams's symptoms, and he told Dr. Robinson: "I need to go to the hospital."  Dr.

9   Robinson sent Mr. Sams back to his cell.

10      44.   Roughly one hour later, Mr. Sams began ringing his call bell and standing at the

11  window of his cell.

12

13      45.   Mr. Sams was later brought back to Correctional Health Services.  He

14  continued to complain of severe abdominal pain.

15      46.   Upon information and belief, Dr. Robinson failed to order tests and/or provide

16  medical care consistent with the standard of care for her profession.

17      47.   Upon information and belief, Does I-XX failed to promptly perform all of Dr.

18  Robinson's instructions and tests regarding Mr. Sams.

19      48.   Dr. Robinson consulted with "JPS," upon information and belief Jail

20  Psychiatric Services, a County and/or Department entity which provides health care services

21

22  for detainees at the Main Jail.

23      49.   Mr. Sams was sent back to his cell.

24      50.   Several hours later, at approximately 1:00 a.m. on June 15, 2006, Mr. Sams

25  returned to Correctional Health Services.

26
        51.   He continued to suffer from severe abdominal pain.  In addition, Correctional

Health Services noted that his skin was cold, and that he was "perspiring on top of [his] head." Mr. Sams's head was shaved bald at the time of his arrest and incarceration.

52.   Correctional Health Services placed Mr. Sams atop two mattresses, which were laid on the floor.

53.   Two hours later, Mr. Sams's head and hands were shaking, and he complained that he was suffering from seizures.

54.   Less than two hours later, Mr. Sams was found prone on the floor. He was not breathing, he had no pulse, and he was unresponsive.

55.   He was pronounced dead at approximately 4:45 a.m.

56.   Mr. Sams's death certificate states that he died at approximately 4:40 a.m. on June 15, 2006. The "cause of death" is listed as: "perforated duodenal peptic ulcer."

57.   Upon information and belief, a perforated duodenal peptic ulcer is easily treatable, and dying due to this medical condition while under the care of competent medical professionals is highly unusual.

58.   Throughout his incarceration, Mr. Sams complained of, and/or exhibited, symptoms that led, or should have led, Defendants to provide Mr. Sams with medical treatment that would have prevented his death.

59.   The Public Entity Defendants, their employees, and their agents caused Mr. Sams's injuries and death by, *inter alia*: denying Mr. Sams access to medical treatment; delaying Mr. Sams's access to medical treatment; failing to diagnose Mr. Sams's ulcer; failing to properly treat his ulcer; failing to transport him to a hospital; and otherwise breaching their duties and applicable standards of care.

60.   At all relevant times herein, Sheriff McGinness, Dr. Hand, Mr. O'Shaughnessy,

Dr. Robinson, and Does I-XX were acting within the scope of their employment and/or agency with the Public Entity Defendants, and the Public Entity Defendants are therefore vicariously and jointly and severally liable for all of their acts or omissions under, *inter alia*, the doctrine of *respondeat superior*.

61.   Upon information and belief, Sheriff McGinness, Dr. Hand and Mr. O'Shaughnessy are responsible for providing, managing, and overseeing the provision of, medical care at the Main Jail.

62.   Mr. Sams's death was caused by Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy's negligent, reckless, and intentional acts and/or omissions in providing, managing, and overseeing the provision of, medical care at the Main Jail.

63.   Upon information and belief, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy are further responsible for hiring, training, retaining, supervising, monitoring, and/or disciplining staff at the Main Jail and Correctional Health Services regarding the treatment of sick Main Jail detainees.

64.   Mr. Sams's death was caused by Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy's negligent, reckless, and intentional acts and/or omissions in hiring, training, retaining, supervising, monitoring, and/or disciplining staff at the Main Jail and Correctional Health Services regarding the treatment of sick Main Jail detainees.

65.   Upon information and belief, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy are further responsible for setting policies and procedures regarding, *inter alia*: provision of medical treatment at the Main Jail; staffing levels at Correctional Health Services; and/or the transfer of detainees from Correctional Health Services to civilian hospitals.

66.   Mr. Sams's death was caused by Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy's negligent, reckless, and intentional acts and/or omissions in setting policies and procedures regarding, *inter alia*: provision of medical treatment at the Main Jail; staffing levels at Correctional Health Services; and/or the transfer of detainees from Correctional Health Services to civilian hospitals.

## COUNT I
### Violation of William Sams's Civil Rights – Right to Necessary Medical Care
**(Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy)**

67.   Paragraphs 1-66 are incorporated by reference as though fully set forth herein.

68.   This Count arises under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments of the U.S. Constitution, and is alleged against the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy in their individual capacities.

69.   At all times relevant herein, Defendants acted under color of the laws of the County.

70.   The Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy knew or should have known that Mr. Sams was in serious need of immediate medical attention and treatment for his injuries as described herein.

71.   As a result of the foregoing, the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy were obligated to take all reasonable measures under the circumstances to obtain prompt and/or immediate emergency medical treatment for Mr. Sams's injuries.

72.   During Mr. Sams's incarceration at the Main Jail, Mr. Sams was placed in a locked jail cell for unreasonable lengths of time, and denied access to visitors.  He was therefore unable to seek medical attention on his own.

73.     The Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy acted with deliberate and conscience-shocking indifference, as well as reckless disregard, to Mr. Sams's serious medical needs, rights and safety by intentionally delaying emergency medical care, despite repeated requests for such care by Mr. Sams.

74.     In addition, the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy acted with deliberate and conscience-shocking indifference, as well as reckless disregard, to Mr. Sams's serious medical needs, rights and safety by intentionally denying Mr. Sams necessary medical care despite repeated requests for such care by Mr. Sams.

75.     In addition, the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy acted with deliberate and conscience-shocking indifference, as well as reckless disregard, to Mr. Sams's serious medical needs, rights and safety by intentionally denying Mr. Sams medical care consistent with the applicable standards of care, despite repeated requests for such care by Mr. Sams.

76.     In addition, the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy acted with deliberate and conscience-shocking indifference, as well as reckless disregard, to Mr. Sams's serious medical needs, rights and safety by intentionally denying Mr. Sams's repeated requests for transfer to a hospital.

77.     In addition, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy acted with deliberate and conscience-shocking indifference, as well as reckless disregard, to Mr. Sams's serious medical needs, rights and safety by intentionally managing and overseeing the provision of medical care at the Main Jail in such a way as to cause Mr. Sams's death as set forth above.

78.   In addition, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy acted with deliberate and conscience-shocking indifference, as well as reckless disregard, to Mr. Sams's serious medical needs, rights and safety by intentionally hiring, training, retaining, supervising, monitoring, and/or disciplining staff at the Main Jail in such a way as to cause Mr. Sams's death as set forth above.

79.   In addition, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy acted with deliberate and conscience-shocking indifference, as well as reckless disregard, to Mr. Sams's serious medical needs, rights and safety by intentionally setting policies and procedures at the Main Jail in such a way as to cause Mr. Sams's death as set forth above.

80.   The Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy knew that their actions and/or failures to act placed Mr. Sams in substantial risk of serious harm, permanent disfigurement and/or disability, and death.

81.   The Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy knew that their actions and/or failures to act would cause Plaintiff Mr. Sams to suffer extreme and horrific pain and mental anguish for an unreasonable length of time.

82.   In so acting and/or failing to act, the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy thereby deprived Mr. Sams of his clearly-established constitutional right to necessary medical care and treatment under the Due Process Clause of the Fifth Amendment.

83.   The Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy's actions constituted intentional, willful, and callous disregard of Mr. Sams's civil rights.

84.   Prior to his death, Mr. Sams was subjected to terrible pain and suffering that were direct and proximate results of the Doe Defendants, Sheriff McGinness, Dr. Hand, and

Mr. O'Shaughnessy's intentional, willful and callous disregard of his serious need for necessary medical treatment.

85.   Mr. Sams's death was also a direct and proximate result of the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy's intentional, willful and callous disregard of his serious need for necessary medical treatment.

**COUNT II**
**Violation of William Sams's Civil Rights – Supervisory Liability**
**(Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy)**

86.   Paragraphs 1-85 are incorporated by reference as though fully set forth herein.

87.   This Count arises under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments of the U.S. Constitution, and is alleged against the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy in their individual capacities.

88.   At all times relevant herein, Defendants acted under color of the laws of the County.

89.   The Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy's deliberate and conscience-shocking indifference, as well as reckless disregard, to Mr. Sams's safety, health, and serious medical needs were the direct and proximate result of customs, practices, and policies of the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy, as alleged herein.

90.   Such policies, customs and/or practices include but are not limited to an ongoing pattern of deliberate indifference and reckless disregard to the safety, health, and medical needs of Main Jail detainees and/or inmates.

91.   The Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy tacitly and/or actively encouraged, ratified and/or approved of Defendants' failure to

maintain adequate staffing and facilities at the Main Jail.

92.    The Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy tacitly and/or actively encouraged, ratified and/or approved of Defendants' failure to adequately hire, train, retain, supervise, monitor, and/or discipline employees and/or agents at the Main Jail.

93.    The Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy knew that Defendants' conduct was unjustified and would result in violations of constitutional rights.

94.    The customs, policies and/or practices of the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy, were a direct and proximate cause of Mr. Sams's injuries and death, in that they failed to adequately hire, train, retain, supervise, monitor, and/or discipline their employees and/or agents, or to promulgate appropriate policies or procedures or take other measures to prevent Mr. Sams's death.

95.    As a direct and proximate result of the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy's aforementioned customs, policies and/or practices, Mr. Sams suffered injuries and damages as alleged herein.

**COUNT III**
**Violation of Civil Rights – Monell Claim**
**(Public Entity Defendants)**

96.    Paragraphs 1-95 are incorporated by reference as though fully set forth herein.

97.    This Count arises under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments of the U.S. Constitution, and is alleged against the Public Entity Defendants.

98.    The Public Entity Defendants' violations of Mr. Sams's civil rights as well as their deliberate indifference and reckless disregard to Mr. Sams's medical needs and safety,

as set forth herein, were the direct and proximate results of the Public Entity Defendants'

longstanding customs, policies, and practices.

99.   These longstanding customs, policies, and practices constitute the Public Entity Defendants' standard operating procedures.

100.  Such policies, customs, and/or practices include, *inter alia*: an ongoing pattern of deliberate indifference and reckless disregard to the health needs and safety of Main Jail detainees; the failure to maintain adequate health staffing and facilities to provide for health needs and safety of Main Jail detainees; the failure to properly train Main Jail medical professionals; the failure to properly train and/or supervise Main Jail non-medical staff regarding the treatment of ill detainees; the failure to comply with medical professionals' judgments and/or orders regarding tests and/or procedures for ill detainees; the policy or custom of refusing to transport ill detainees outside the Main Jail for hospital treatment; and the policy or custom of permitting and/or encouraging changes to medical professionals' judgment regarding the treatment of detainees.

101.  The Public Entity Defendants expressly or tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein, and knew that such conduct was unjustified and would results in violations of Constitutional rights.

102.  As a result of the foregoing, Mr. Sams was subjected to terrible pain and suffering that were a direct and proximate result of the Public Entity Defendants' customs, policies, and/or practices.

/ / /

## **COUNT IV**
### **Intentional Infliction of Emotional Distress**
### **(All Defendants)**

103.  Paragraphs 1-102 are incorporated by reference as though fully set forth herein.

104.  This Count is alleged against all Defendants.

105.  Sheriff McGinness, Dr. Hand, Mr. O'Shaughnessy, Dr. Robinson, and Does I-XX's above-described acts and omissions – including, *inter alia*: 1) their disregard of Mr. Sams's complaints that he suffered from extreme stomach pain and required medical treatment and hospital care; 2) their failure to seek necessary medical care, despite Mr. Sams's repeated requests for such care, while Mr. Sams suffered from his ulcer for days; and 3) their denial of Mr. Sams's access to visitors, including his mother, Ms. Hewitt – were so outrageous in character and extreme in degree so as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

106.  Sheriff McGinness, Dr. Hand, Mr. O'Shaughnessy, Dr. Robinson, and Does I-XX engaged in the aforementioned conduct intentionally and/or recklessly.

107.  As a proximate result of the aforementioned conduct, Sheriff McGinness, Dr. Hand, Mr. O'Shaughnessy, Dr. Robinson, and Does I-XX intentionally and/or recklessly caused Mr. Sams to suffer severe emotional distress by allowing Mr. Sams to remain untreated for an unreasonable length of time despite his severe and serious medical condition.

108.  All actions of Sheriff McGinness, Dr. Hand, Mr. O'Shaughnessy, Dr. Robinson, and Does I-XX's as alleged herein, including Sheriff McGinness, Dr. Hand, Mr. O'Shaughnessy, Dr. Robinson, and Does I-XX's intentional infliction of emotional distress upon Mr. Sams, occurred within the course of their duty and the scope of their employment

and/or agency as employees of the Public Entity Defendants.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

## COUNT V
### Negligent Care
**(Public Entity Defendants, Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy)**

109.  Paragraphs 1-108 are incorporated by reference as though fully set forth herein.

110.  This Count is alleged against the Public Entity Defendants, the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy.

111.  The Public Entity Defendants, the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy, directly and/or by or through their respective agents and/or employees, had duties to promptly and/or immediately obtain reasonable medical treatment for persons, including Mr. Sams, held in the Main Jail who needed or claimed a need for medical treatment.

112.  As set forth more fully herein, the Public Entity Defendants, the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy were negligent and breached their duties of care to Mr. Sams while he was in their custody.

113.  The Public Entity Defendants, the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy were negligent and breached their duties of care by, *inter alia*: 1) failing to promptly and/or immediately obtain reasonable medical treatment for Mr. Sams while he was in their custody at the Main Jail; and 2) failing to comply with all applicable laws, statutes, regulations, and standards with regard to their treatment and actions towards Mr. Sams while he was in their custody at the Main Jail.

114. As a direct and proximate result of the Public Entity Defendants, the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy's negligence, Mr. Sams suffered severe pain, mental anguish, distress, serious physical injury, and death.

115. All actions of the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy as alleged herein, including the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy's negligence, occurred within the course of their duty and the scope of their employment and/or agency as employees of the Public Entity Defendants.

### COUNT VI
### Negligent Training and Supervision
**(Public Entity Defendants, Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy)**

116. Paragraphs 1-115 are incorporated by reference as though fully set forth herein.

117. This Count is alleged against the Public Entity Defendants, the Doe Defendants (to the extent that they were responsible for training and supervision of Main Jail employees and/or agents), Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy.

118. The Public Entity Defendants, the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy, directly and/or by or through their respective agents and/or employees, had duties to reasonably train and/or supervise the Main Jail employees and/or agents who were responsible for the care of persons, including Mr. Sams, held in the Main Jail who needed or claimed a need for medical treatment.

119. As set forth more fully herein, the Public Entity Defendants, the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy were negligent and breached their duties of care to Mr. Sams while he was in their custody.

120. The Public Entity Defendants, the Doe Defendants, Sheriff McGinness, Dr.

Hand, and Mr. O'Shaughnessy were negligent and breached their duties of care by, *inter alia*, negligently hiring, training, retaining, supervising, monitoring, and/or disciplining staff at the Main Jail in such a way as to cause Mr. Sams's death as set forth above.

121.  As a direct and proximate result of the Public Entity Defendants, the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy's negligence, Mr. Sams suffered severe pain, mental anguish, distress, serious physical injury, and death.

122.  All actions of the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy as alleged herein, including the Doe Defendants, Sheriff McGinness, Dr. Hand, and Mr. O'Shaughnessy's negligence, occurred within the course of their duty and the scope of their employment and/or agency as employees of the Public Entity Defendants.

## COUNT VII
### Medical Malpractice
### (Public Entity Defendants, Doe Defendants)

123.  Paragraphs 1-122 are incorporated by reference as though fully set forth herein.

124.  This Count is alleged against the Public Entity Defendants and the Doe Defendants.

125.  Defendants Does I-XX (to the extent that they were, at the relevant times, health care professionals), and the Public Entity Defendants, directly and/or by or through their respective agents and/or employees, had duties to use such skill, prudence, and diligence as other members of their profession commonly possess and exercise in their medical treatment of Mr. Sams while he was in their custody.

126.  As set forth more fully herein, the Public Entity Defendants and the Doe Defendants breached their duties of care to Mr. Sams.

127.  As a direct and proximate result of the Public Entity Defendants and the Doe Defendants' professional malpractice, Mr. Sams suffered severe pain, mental anguish, distress, serious physical injury, and death.

All actions of Defendants Does I-XX's as alleged herein, including Defendants Does I-XX's medical malpractice, occurred within the course of their duty and the scope of their employment and/or agency as employees of the Public Entity Defendants.

**COUNT VIII**
**Wrongful Death**
**(All Defendants)**

128.  Paragraphs 1-128 are incorporated by reference as though fully set forth herein.

129.  This Count is alleged by Ms. Hewitt individually against all Defendants.

130.  As set forth more fully herein, Defendants tortiously caused Mr. Sams's death.

131.   As a direct and proximate result of Defendants' tortious conduct and Mr. Sams's death, Ms. Hewitt suffered, continues to suffer, and will suffer in the future: the loss of Mr. Sams's financial support, services, training, advice, gifts, benefits, love, companionship, comfort, care, assistance, protection, affection, society, and moral support. In addition, Ms. Hewitt incurred funeral and burial expenses arising from Mr. Sams's death.

132.  All actions of the Individual Defendants as alleged herein, including the Individual Defendants' tortious actions which caused Mr. Sams's wrongful death, occurred within the Individual Defendants' course of their duty and the scope of their employment and/or agency as employees of the Public Entity Defendants.

/ / /

/ / /

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT THIS COURT GRANT THE FOLLOWING RELIEF:

1.     Compensatory, general and special damages against each Defendant, jointly and severally, in the amount proven at trial;

2.     Punitive and exemplary damages against each individually named Defendant(s) in an amount appropriate to punish Defendant(s) and deter others from engaging in similar misconduct;

3.     Costs, expenses and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205 and as otherwise authorized by statute or law;

4.     Such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

Dated:  May 30, 2007                    Respectfully submitted,

LAW OFFICES OF GERI LYNN GREEN, LC


By *Geri Lynn Green*
Geri Lynn Green
Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Dated:  May 30, 2007                    Respectfully submitted,

LAW OFFICES OF GERI LYNN GREEN, LC


By *Geri Lynn Green*
Geri Lynn Green
Attorneys for Plaintiff